The next case is Chalco v. Belair et al. Good morning. Good morning. Judges of the Court of Appeals, good morning. My name is Tom Girard, and I'll be arguing this morning on behalf of the defendant, Christopher Belair. Your Honors, I'd like to spend the few minutes I have arguing the claim of due process violation based on a denial of medical treatment to this person. The law . . . Your procedural question first, though. Sure. It's certainly a question for the other defendants as well, which is you didn't raise qualified immunity in your motion. No, we did. Well, you did in your memorandum. I saw that. So that may be sufficient. But the district court did not decide anything in this case on the basis of qualified immunity. It's not even mentioned in her decision. I know that. So what are we to do with that? And how do you get to have an interlocutory appeal under those circumstances? Well, paragraph three of our motion for summary judgment reads that the actions were objectively reasonable. It doesn't say the words qualified immunity, but it does state the . . . I mean, that's qualified immunity, clear and simple, and we did brief it. So I think qualified immunity is here. Objectively reasonable applies to just a Fourth Amendment claim or a due process claim of excessive force. I did see it in your memo. Yes. You raised it, but she didn't address it at all as to any of these claims. Did you ask to reconsider and say, look, in order for us to appeal your denial on the excessive force claim, we need a decision on qualified immunity. Otherwise, we have to wait until the end of the case. No, we didn't move to reconsider, but we did bring the interlocutory appeal. And the issue is that the district court is required to consider qualified immunity. I mean, that's an immunity from suit. It's not an immunity from liability. So I think we're here, and particularly in a case that is this important, because what our district court did with respect to this due process claim is go completely outside uniform law that says that in order to have a due process violation for denial of medical attention, you have to have a pre-trial detainee. A person has to be detained. Wait, wait, wait, wait. First of all, he was detained, right? There's no question he was in the custody of the police at the time that all this is occurring. While the traffic ticket was being written, he was in the custody. And then what they decided to do was to cut him loose and leave him intoxicated, too intoxicated to drive, to walk a mile home in a snowstorm. He didn't get arrested for DUI. He didn't have a license. I know, that's an interesting thing. But they did impound his car. Why did they impound his car? Because he had no driver's license, and he, in fact, never had a driver's license. That didn't have to do with the fact that he was too drunk to drive. Well, he didn't get DUI. So the point is he walked home. I think maybe could not a reasonable jury think that one of the reasons he did not get a DUI was that if he got a DUI, they would probably have to take him in. And if they took him in, all the other police officers would see that he had a busted lip. Well, we're talking about there's a Fourth Amendment claim that may or may not be argued to the jury, and then we'll all get that day in court. But the point is look where this judge has gone with the due process protections. That has never been applied to someone who has been given a traffic ticket and then walked away. But the court did not apply a failure to give medical attention. The court decided that the evidence and the pleading, the evidence to which the pleadings could be deemed to conform, showed a state-created danger situation where the police exposed him to considerable danger when they did not have to. And the state-created danger, this is the other piece the court has gone far afield. State-created danger exception has never been applied to a situation where someone has not then suffered a subsequent harm after having contact with the police. It always is a scenario where you have contact with the police, you then are left and then you have something happen to you, an injury by a third person or you get hurt on your own, and then on the look back it gets traced back to the police saying the police materially increased the chance that that might happen. Actually, those are much harder cases, aren't they? And in those cases there was found to be a state-created danger on the theory that by not arresting someone, by not arresting a domestic violence offender, the police sort of indirectly encouraged that person. Now that strikes me as a much harder case than, for example, if the police took someone in Mr. Chalco's position and decided to drop him off by the edge of a cliff. If they create a danger much more directly than in those cases that the court struggled with to find a theory to hold people liable, if those are cases of state-created danger, why would not it be a much more obvious case of state-created danger when the police put somebody deliberately into a dangerous situation directly? It's not going to be that because they didn't arrest some guy who later attacks him while he's walking home. It's not that kind of thing. It's that they put him in a dangerous situation when they obviously didn't have to. They could have taken him into the station, put him in the drunk tank. They could have driven him home. But instead they deliberately put him in a situation where he's lucky he survived getting home. They let him walk home is what they did. And the reason why this is an exception to the – the De Cheney rule is the general rule on the scope of where – Yes, because that's about not protecting somebody from third parties. This is not a De Cheney case. This is not a case where the argument is the police should have given him protection against somebody who mugged him. This is a case about the police putting somebody in a situation that's dangerous to his health. They chose to do that directly. Well, then where – our court admitted, our trial court admitted there is no precedent in this circuit for that, what Your Honor just said. And she relied on a case from 1980s in the Ninth Circuit where someone was left alone and was sexually assaulted and another person tumbled down a hill and got a TBI. Wait a minute. Why isn't it your co-counsel is arguing this point? Because this point applies to the other guys, right? Primarily your guy – your guy's got a problem about he is alleged to have punched the guy when he was in custody, not resisting, et cetera, et cetera. Exactly. So you're kind of conceding that that's not – there's no qualified immunity there? No, no. I'm here for qualified immunity. That's the point. But where's the qualified immunity about that? Because in order for – it's because the law at the time of our date has to be clearly established such that every reasonable police officer would know that if I let this man walk home – Wait a minute. I'm sorry. I'm asking you, do you have any argument at all why your client has qualified immunity from the claim that he punched this guy in the mouth while he's standing there blubbering and drunk and apologizing for his poor driving? That's the Fourth Amendment claim, and I'm talking now about the due process claim. Yeah, but your time is long since over. I understand. And you started out by saying you had to spend your few minutes talking about this other claim. I'm wondering, is there any argument that you have at all that your client should have qualified immunity or any other defense that's relevant on this appeal to that charge? To the Fourth Amendment charge? Right. I'm limited by the fact that Your Honors would have to agree that you looked at the video and there was no issue of fact he didn't punch the man. That's the only way I could get qualified immunity from him. Uh-huh. And you looked at the video, and you didn't see the guy's head jerk back over the car? No. Well, I think we're in Scott v. Harris testimony. I think we have a colorable argument. The better argument – No, you have a colorable argument. It's a factual argument that goes to the jury. It's not something that you even get an interlocutory appeal about because the question is, how would a jury read that video? And maybe a juror will read the video differently than I did. That's possible. It's perfectly possible. You'll have a good argument there. But I don't see how you have any argument that you can prevail on qualified immunity on – I mean, this is not a tape that unambiguously shows there was no punch. That's for sure. Fourth Amendment's a problem. The due process is a clear qualified immunity, Judge. There's no precedent for that whatsoever. Can I ask you just a second to follow up on Judge Lynch's earlier question? That is, on the state-created danger aspect of this. I didn't see it pled in the complaint. I know that in the district court's decision, though, she mentions it, disdainy type of cause of action. Was there argument on the summary judgment motions? I don't think there was. No oral argument. So was that a surprise to you, too? Where did that come from? It was a shock, not only because it hasn't been pled and it wasn't argued in any brief, but also because the disdainy line of cases do not apply to the kind of facts we have. Its origin is in the fact that the due process has a limit of protection, and there is no protection from some harm that happens after you leave custody of the police. Did she say something about that? My recollection is she said, but even though I'm denying the summary judgment as to the disdainy aspect of this case, because there's no injury after they released him to walk down the street. I mean, the other disdainy cases that I'm aware of is the person gets hit by a car walking down the highway. Right. After being carved. Yes, there's. But didn't she say, I'm recognizing the cause of action, but only nominal damages would apply? She did say that. She said because there's no evidence of anything, nothing happened, then I would only allow nominal damages. But that doesn't protect me from punitive damages. It doesn't protect me from more serious arguments. The question is, was that a surprise to everybody in the case that all of a sudden now we have a disdainy cause of action? I'll speak for everyone on my side of the V. All the defendants were startled and shocked because it wasn't argued, and it doesn't apply. There is no case law in this country that you can find where someone was not hurt and then said, but I could have been, so you've committed a constitutional violation. That's negligence law. I know you have a little time reserved for rebuttal. Thank you. Let me hear from Mr. Conroy. I know you have a presentation to make, but I'm curious about this procedural aspect, Mr. Conroy. This is your three clients, and that is you didn't move on the basis of qualified immunity. There's some language about Monell protections applying to these officers. I saw that. But I saw nothing in your motion or in your memorandum or in the court's decision about qualified immunity for your three police officers. How are we here today, then? That is correct, Your Honor. Well, again, to echo brother counsel, I believe it was incumbent upon the district court to address the immunity issue in the summary judgment decision. Incumbent on the court to address something that you don't ask it to address? It was referenced in our brief. It certainly wasn't the primary focus of our motion. The primary focus of our motion. You didn't address the standards of qualified immunity. You addressed Monell liability. We did at the summary judgment phase. Correct. Monell is a different immunity altogether, and it's based on different standards? Correct. And it doesn't apply to the individual defendants anyway, does it? It applies to the city. In the official capacity. They were sued in their official capacity. Only? Yes. Isn't there an 11th Amendment problem with that? Because suing them in their official ‑‑ it can't be that the plaintiff intended to sue them in their official capacity because that is tantamount to suing the state or something. Or, no, here it would be the city, and, therefore, it's Monell liability. Correct.  Correct, but they are defendants in their official capacity. So the thrust of the summary judgment was directed not at necessarily the immunity issues, but it was directed at the failure of the plaintiff to be able to establish the key elements of his claim per his own testimony. You're saying that you weren't asking the judge to give you summary judgment on the basis of qualified immunity. It certainly wasn't the thrust of our motion. You weren't asking for it. I don't recall that being addressed in the motion, but the primary thrust of the motion, as I indicated, was the fact that the plaintiff, through his own testimony, was unable to establish any of the elements of the one count that was brought against my clients, and that one count was deliberate indifference to medical needs. Do we have the authority to address that in the absence of a district court decision? In other words, there are some cases that say the Court of Appeals can say, even if qualified immunity is not addressed below, that if it's obvious that it would be a defense, that we can reach out and do what you're asking us to do? Yes, and it's also de novo review. I think if the court reviews the uncontroverted facts below at the summary judgment phase, in fact, we rely on nothing but plaintiff's own testimony. Plaintiff himself, and I think the key quote in this case, plaintiff's sworn testimony was, quote, it's not a big injury, unquote. And that was his way of referring to this split lip he claims to have received at the hands of Mr. Belair. He acknowledges that he left the scene of his own accord, and just to address some of the points that were made earlier. Is the operative complaint in this case the one that's at appendix page 16? It should be the only one that's in the appendix. It says Rene Chalco Plaintiff against Christopher Belair, Robert Medour, Ryan Howley, and Andrew Katkocin? Katkocin, yes. Katkocin defendants? Correct. Where does it say anything about official capacity? It says they acted under color. On the summons. On the summons. On the summons. Each was sued in his official capacity. But the operative complaint doesn't say that. There's no allegation. It's silent. Why would we assume that they're not sued as individuals the way police officers are every day of the week? It's silent on that issue. The summonses are not. I see. Did the district court see the summons? Was the summons? I mean, so did you, you said your motion addresses this idea that they are only sued in their official capacity? Tangentially. The thrust of the motion is as to the elements of the claim, which per the plaintiff's own testimony he cannot establish. And the only way the court, the court, the district court in its summary judgment ruling acknowledges this and then salvages the claim and denies the summary judgment by bootstrapping in this, apparently. So your procedural argument here is that the district court erred by invoking a cause of action that the plaintiff had not himself alleged. That's your argument. That's a primary thrust of it, yes. But why do you get an interlocutory appeal on that kind of error? The interlocutory appeal is triggered by the immunity issue and then this court has . . . Which immunity issue? The quality . . . The immunity issue that you did not raise in the district court. That is correct. All right. That's an interesting . . . Thank you, Mr. Conroy. You've got a minute for rebuttal as well. Ms. Rogers? Beverly Rogers for the plaintiff appellee. Good morning. Good morning. The late Senator Daniel Patrick Moynihan once stated that you are entitled to your own opinion, but you are not entitled to your own facts. The defendant's appeal in this case is solely generated by their generation of facts, which never happened in this case. So they are opining facts which are not in evidence. Your Honors mentioned . . . The last case that we talked about earlier . . . Yes. . . . did he suffer any more after he got punched by his walk home? No. So how were the other three police officers kept in the case? What did they do that was deliberately indifferent to his needs? Well, I think you need to look at the totality of the circumstances. Police Officer Bolaire is about six foot three. My client is about my height. Officer Bolaire is a well-built, physically fit person. He appears to be. My client is much shorter, much thinner. I think one could correctly infer that when a six foot 230 pound person punches a police officer in full uniform, carrying a gun, surrounded by three other police officers in uniform carrying a gun, that when that person is punched, he's going to have a physical injury. Mr. Bolaire didn't punch him to just give him a tap on the shoulder and say, you know, you shouldn't be doing this. That's the punch. That is the punch, yes. Yeah. I thought the question was about what did the other officers, for example, do, or for that matter, Bolaire, that inflicted some injury on your client beyond the punch by having him walk home in the snow? Because it sounded to me like he walked home in the snow, went to bed, got up the next morning, looked in the mirror, saw he had a bloody lip from being punched. Okay, well, he walked home in the snow. There was a heavy snowstorm, so it wasn't like walking along the street. So he's endangered. Did he suffer any injury from that? Not any injury I think that would qualify for a serious medical injury in this case. But the other officers did nothing. And in fact, on the indifference to the medical care, during the police department's internal investigation, police officer Medora admitted that it was not routine for three officers, much less four, to be standing with somebody who stopped for a traffic stop. And he admitted that the police officers had a duty of care to arrange transportation for Mr. Chalco to get home. He admitted that, Your Honor. Did he admit that there was a duty of care arising under the Constitution, or did he admit that there was a duty of care arising, as would be relevant in the internal proceeding, from the policies and procedures of the police department? There was a duty of care from the policies and procedures of the police department that he and the other officers did not take Mr. Chalco home. And we . . . Can I go back? Because now it sounds like you are arguing that having been punched and having had this injury, that the officers were indifferent to the medical needs stemming from that punch. Correct. That's not the theory that the district court ruled on, is it? Didn't the district court reject the theory of deliberate indifference to medical needs and, in effect, create or recognize a different cause of action about putting a person in danger by having him walk drunk home through the snow? I don't believe so, but I will rest with Your Honor's reading of Judge Bryant's decision. Let me ask another question that came up here today. Mr. Conroy said that you . . . you were counsel all the way through with Mr. Chalco? Yes, sir. That you sued these officers in their official capacities? That's incorrect. Okay. He said on the summons it said something about official capacity. Is that . . . I would have to look at the summons. I didn't look at the summons in preparation for being in court today, but it's not . . . They didn't bother to present that important document to us if that's some theory that they wanted to argue. And it's not in the complaint? It's certainly not in the complaint. All right. And you sought compensatory and punitive damages against them? Yes. I have a few other remarks. I don't think . . . What do you say about the issue of qualified immunity with respect to the two different . . . Bill Ayer and the other officers? Well, the three other defendants, Medour, Halley, and Katkosin, they never pleaded it. And so, I think they are time barred from pleading it. With regard to Mr. Bollier, deliberate in . . . I'm sorry. May I just have a minute, please? The force for excessive claim, I believe, survives because the conduct had to have been excessive and outrageous. The conduct had to have been not under the color of law. There was no legal reason for Mr. Bollier . . . First of all, there was no legal reason for Mr. Bollier to even show up at the scene because there were three officers already at the scene. They didn't give my client a breathalyzer. They didn't do any field sobriety test. My client was completely apologetic, noncombative. He didn't have a gun. So, why Mr. Bollier decided to remain at the scene of the crime and then harangue my client and berate him and then finally punch him, that has . . . that's never been explained. Mr. Bollier . . . Your client said, though, that the reason for it was that Bollier had said that some relative of his family . . . Yes. . . . in his family had been hit by a drunk driver? His uncle. Right. And that's what triggered Mr. Bollier's conduct. That's what triggered . . . What was the traffic ticket he got? Going through the stop sign and driving without a license. Is that right? Yes. Now, I also mentioned . . . Thank you, Judge Litch. I appreciate that. I would also like to mention that . . . But, he didn't get any kind of procedure for intoxication, if that was the reason, you know, that started the fight. Correct. Is there any explanation for that? Why he wasn't even at least given a breathalyzer or taken in for a blood test or something? Well, I can answer your question based on my belief of what the facts tell us. The facts tell us that Officer Bollier, very quickly upon his arrival at the scene, after he exited the vehicle, punched my client. And, if the police had taken my client to a hospital for some medical attention, which I am sure . . . I would bet my life on, in the course of their police training, they are taught . . . If somebody claims they were punched, you need to take them, you know, for some follow-up medical care. But, the reason they didn't do that is, A, maybe they were feeling lazy that night. Maybe Medor, Officer Medor, was feeling lazy and he didn't want to do a breathalyzer and spend the time doing a field sobriety test and then take my client. I think Judge Lynch had another answer, which is that they didn't want it to be seen . . . Yes. . . . that he had a fat lip from having been punched by a police officer. And, if he had been taken to the hospital for any medical attention, the medical personnel would have said to him . . . How did you get this injury? It looks like you were punched. It didn't look like you fell on the sidewalk or slipped in the snow. So, the conduct of the police officers was outrageous, was just outrageous and unnecessary. What Officer Medor and Officer Howley and Cat Coulson should have done was to field test the plaintiff. They should have given him a breathalyzer. They should have put him in a police car. They should have driven him to the police station. They should have let him sleep there for the rest of the night. Arrested him for . . . well, we don't know if he was . . . if the amount of alcohol he consumed rose to the level of intoxication. We don't know that, because there's no proof of that. I mean, everything they did just goes against standards of decent conduct. And, I would ask that your Honors affirm Judge Bryant's decision. Thank you. Mr. Rogers, rebuttal. Your Honors, in rebuttal, the trial court has done three things that justify reversal. The first is extended due process protections for denial of medical needs to persons who are able to help themselves, not pretrial detainees. That's never been done. They extended the state-created danger exception to DeShaney to scenarios where there's no subsequent injury. So, think about the limitless claims that will result if due process now encompasses scenarios where you put me in danger, but I didn't get hurt. That could be . . . every time someone's in a traffic stop and they're allowed to leave, we'll be involved in that. But, most importantly, there's no analysis of qualified immunity anywhere. You don't have the right to appeal. There was no . . . you didn't ask for qualified immunity. There's interlocutory appeal for qualified immunity. No, I . . . we did. People who ask . . . officers who ask for it are entitled to be protected from having a trial if the facts warrant qualified immunity. My . . . Somebody who didn't seek it. My officer clearly sought qualified immunity. It's in the motion for summary judgment. It's argued in volumes in the brief. Don't you acknowledge that the motion paper, that the motion did not ask for qualified immunity? No. Paragraph three of my motion is it's no liability on the constitutional issue for excessive force. That's one. No liability for the constitutional issue for due process. That's two. And three, that as to one and two, all of our actions were objectively reasonable and, therefore, we are entitled to judgment. And that's our qualified immunity claim. Wait, wait, wait, wait, wait. Point three is all of your actions were reasonable under the circumstances. Yes. That's your qualified immunity claim. Yes, that's exactly right. And then it's followed up in the brief with pages and pages and pages. There's nothing that says you need to say . . . Pages that talk about qualified immunity. Absolutely, in the brief. It's in spades. Because that's not in . . . and none of this is in the appendix, so this is all news to me. My . . . oh, our briefs are not in the appendix. Our summary judgment briefs are not in the appendix. You're right. But there's no dispute. Counsel will not . . . I'm not saying that makes any waiver. That's why I was surprised that Judge Roney was obviously more diligent than I and dug up those motions from the record. But I did not . . . I was kind of taking for granted, I guess, that if you're arguing qualified immunity here, you probably argued it below. And you're saying you did in the brief. We did, and counsel does not dispute that with respect to Bel Air. But, Your Honors, there was . . . Is that the . . . this is your motion . . . this is your notice of motion on A57, is that right? Yes, Your Honor, A57, paragraph 3. Where does it say that you seek summary judgment on the basis of qualified immunity? Officer Bel Air is entitled to judgment as a matter of laws to the plaintiff's claims of excessive force and deliberate indifference to medical needs as his conduct under the circumstances presented was objectively reasonable. That sounds to me like saying that it wasn't excessive force because it was objectively reasonable, and it wasn't deliberate indifference because deliberate indifference requires recklessness with respect to a serious medical need. And if their conduct was reasonable, then they didn't do that. Those are the arguments in paragraphs 1 and 2. This is the qualified immunity paragraph. There's no case law that says you need to say the word qualified and immunity. That sometimes becomes confusing. But I guess the point is . . . your principal argument is your brief made clear what the point was. It made it clear, and my opposing counsel does not dispute that, that we raise qualified immunity at summary judgment. Thank you. Thank you. Can we hear from Mr. Conroy? Do we have time for rebuttal? Mr. Conroy? Just very briefly, one point, Your Honor. The opposing counsel began her presentation by stating that we on the defense side are relying on our own facts or words to that effect. I think the only facts that are pertinent are the plaintiff's own admissions in his sworn testimony, the excerpts of which I believe have been presented to the court. Mr. Chalco testified at his deposition that after this alleged punch, there was no blood apparent at the scene. He did not complain to anyone of any injury at the scene. He did not request any medical attention at the scene. And he conceded essentially that unless someone had actually seen this alleged punch take place, there was no objective indication to any third party that he had been injured at all. He then testified that he walked home. He washed up. He went to bed. He got up the next day, thought about whether or not he should seek medical attention, and then decided not to because, again, the key quote in this case, it's not a big injury. Those are plaintiff's words. Thank you. We'll reserve. Thank you all. We'll reserve the decision in this case and then turn to our next.